IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DIANE GASTON, et al., | ) CASE NO. 1:23-cv-00850 |
| | ) |
| Plaintiffs, | ) |
| | ) JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) |
| | ) |
| CUYAHOGA COMMUNITY | ) **MEMORANDUM OPINION AND** |
| COLLEGE CHAPTER, AMERICAN | ) **ORDER** |
| ASSOCIATION OF UNIVERSITY | ) |
| PROFESSORS, et al., | ) |
| | ) |
| Defendants. | ) |

Plaintiffs Diane Gaston and Linda Lanier, proceeding pro se, filed suit against their union, Defendant Cuyahoga Community College Chapter, American Association of University Professors (the "AAUP"), alleging various claims stemming from the AAUP's purported failure to properly represent Plaintiffs in employment disciplinary proceedings. Plaintiffs have also named several AAUP officers—Michael Boyko, David Bernatowitz, and Lemuel Stewart ("Individual Defendants," and together with the AAUP, "Defendants")—as defendants.

Before the Court is Defendants' motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction. (Doc. No. 8.) Plaintiffs responded and, in their opposition, requested that the Court disqualify Defendants' counsel. (Doc. No. 10.) Defendants then replied in support of their motion to dismiss and in opposition to Plaintiffs' request to disqualify. (Doc. No. 11.) For the reasons that follow, the Court GRANTS Defendants' motion to dismiss and, construing Plaintiffs' request to disqualify as a motion, DENIES Plaintiffs' motion to disqualify.

1

I. **Background**

Plaintiffs Gaston and Lanier are tenured professors at Cuyahoga Community College ("Tri-C"). (Doc. No. 1 at ¶ 3.) On May 21, 2021, Plaintiffs participated in an interview with a local television station during which they discussed how students of color were faring in the Covid-19 pandemic. (*Id.* at ¶ 2.) Displeased with the interview, Tri-C issued a disciplinary notice to Plaintiffs, alleging that Plaintiffs made inaccurate and misleading statements. (*Id.*)

Plaintiffs expected that their union, the AAUP, would represent and protect them during Tri-C's disciplinary process. But the AAUP did not do so. (*Id.* at ¶ 3.) According to Plaintiffs, the AAUP did not provide any legal advice, offer any fact finding, or otherwise represent them during internal disciplinary proceedings. (*Id.* at ¶¶ 8–9.) In fact, the AAUP's attorney, Timothy Gallagher, did not attend Plaintiffs' disciplinary hearing, and Plaintiffs were forced to retain their own personal counsel. (*Id.* at ¶¶ 8, 10.)

As the disciplinary process moved from internal Tri-C proceedings to arbitration, Plaintiffs allege that the AAUP and Individual Defendants actively obstructed Plaintiffs' efforts to defend themselves. (*Id.* at ¶¶ 7, 10, 12.) The AAUP also demanded that Plaintiffs release all their claims against the AAUP before allowing Plaintiffs to use personal counsel. (*Id.* at ¶ 14.) Plaintiffs refused to do so but were ultimately able to use the services of their personal counsel at arbitration. (*Id.*) The AAUP's attorney, Gallagher, did not attend the arbitration. (*Id.* at ¶ 12.)

The arbitrator ruled in favor of Plaintiffs, finding that Tri-C had no grounds to bring disciplinary charges against them. (*Id.*, Relief Sought.) Shortly afterwards, Plaintiffs filed suit against Tri-C and several of its employees. *See Gaston v. Cuyahoga Community College*, No. 1:22-cv-02303 (N.D. Ohio). Several months later, Plaintiffs filed this lawsuit against the AAUP and Individual Defendants.

2

## II. **Motion to Dismiss**

### A. Legal Standard

#### 1. **Failure to State a Claim**

Courts liberally construe a pro se plaintiff's pleadings and filings. *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). This means that pro se complaints are "held to less stringent standards than those prepared by attorneys." *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004) (citations omitted). But liberal construction does not "abrogate basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Even a pro se complaint must still comply with Federal Rule of Civil Procedure 8. *See Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 358 (6th Cir. 2012); *see also Fisher v. Fed. Bureau of Prisons*, 484 F. Supp. 3d 521, 530 (N.D. Ohio 2020) ("[Rule 8] applies to all plaintiffs, including those proceeding *pro se*."). And a pro se complaint must also comply with the *Twombly* and *Iqbal* pleading standards. *See Cantley v. Armstrong*, 391 F. App'x 505, 506 (6th Cir. 2010).

Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Kensu v. Corizon, Inc.*, 5 F.4th 646, 650 (6th Cir. 2021) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). So, a "complaint [that] is so verbose, confused and redundant that its true substance, if any, is well disguised" fails to satisfy Rule 8. *Id.* at 651 (internal quotation marks omitted) (quoting *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969)).

Under *Twombly* and *Iqbal*, a complaint survives a motion to dismiss for failure to state a claim only if the complaint alleges enough facts to make out a "plausible" legal claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In this context,

"plausibility" is a legal term of art. A claim is plausible only if there are sufficient factual allegations to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not require a plaintiff to show any particular probability of success, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* That is, a plaintiff needs to plead facts that are more than "merely consistent with" legal liability—the allegations must support an affirmative inference of liability. *Id.* (quoting *Twombly*, 550 U.S. at 557).

When courts evaluate whether a complaint makes out a plausible claim, they must accept all factual allegations as true. *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 534 (6th Cir. 2017) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)). Courts must also draw all reasonable inferences in favor of the plaintiff, and they must generally construe the complaint in the light most favorable to the plaintiff. *Id.* But courts do not accept legal conclusions or other conclusory allegations as true. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010)). And courts are not required to make unwarranted factual inferences. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

2. **Lack of Subject Matter Jurisdiction**

The standard by which courts judge motions to dismiss for lack of subject matter jurisdiction depends on the type of argument made in the motion. A motion can either make a facial attack or a factual attack. *O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009) (citation omitted). Here, Defendants are making a facial attack because they question whether the complaint is sufficient to establish subject matter jurisdiction. *See Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016). In judging a facial attack, courts follow essentially the same

4

standards as for motions to dismiss for failure to state a claim: the courts accept all factual allegations as true but reject conclusory allegations and legal conclusions. *Id.* If, after doing all that, a court finds that the allegations establish subject matter jurisdiction, the complaint survives. *Id.*

### B. Construction of the Complaint

Liberal construction of a pro se complaint may extend beyond lenient application of pleading standards. Sometimes, liberal construction also requires "active interpretation" to construe a pro se complaint "to encompass any allegation stating federal relief." *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (quoting *White v. Wyrick*, 530 F.2d 818, 819 (8th Cir. 1976)). But even given this generous approach to pro se filings, "courts are not required to conjure up [unpled] allegations or guess at the nature of an argument." *Durrstein v. Arthur*, 28 F. App'x 466, 467 (6th Cir. 2002) (citing *Wells*, 891 F.2d at 594); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985) ("Though [pro se] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them.").

Plaintiffs expressly raise the following claims: 42 U.S.C. § 1983 claims for violations of the First and Fourteenth Amendments; and retaliation claims under Title VI, Title VII, and Ohio Revised Code § 4112 et seq. (Doc. No. 1 at ¶ 1.) Applying the principle of liberal construction, because Plaintiffs allege that the AAUP treated them differently due to their race and national origin (*id.* at ¶ 15), the Court construes the complaint as further raising discrimination claims under Title VI, Title VII, and Ohio Revised Code § 4112 et seq. And since Plaintiffs also allege that Defendants "failed in their duty of fair representation" (*id.* at ¶ 3), the Court construes the complaint as raising breach of the duty of fair representation as well.

5

However, the Court is unable to discern what claims Plaintiffs might be raising when they allege "civil liability for criminal acts and civil intimidation under Ohio law." (*Id.* at ¶ 1.) Therefore, the Court does not treat that allegation as a legal claim.

### C. Analysis

#### 1. Section 1983 Claims

Section 1983 only permits claims against defendants acting "under color of state law." *Lindsey v. Detroit Ent., LLC*, 484 F.3d 824, 827 (6th Cir. 2007). In turn, a defendant acts under color of state law when the defendant's actions would constitute state action under the Fourteenth Amendment. *Id.* (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 (1982)). State action typically involves a government actor. *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 172 (1972). Nonetheless, "[a] private actor acts under color of state law when its conduct is 'fairly attributable to the state.'" *Romanski v. Detroit Ent., L.L.C.*, 428 F.3d 629, 636 (6th Cir. 2005) (quoting *Lugar*, 457 U.S. at 947). "The Supreme Court has developed three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (en banc).

Unions, even public-sector unions, are not government actors. *See Littler v. Ohio Ass'n of Pub. Sch. Emps.*, --- F.4th ----, No. 22-4056, 2023 WL 8826587, at *4 (6th Cir. Dec. 21, 2023); *see also Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009) ("Unions are not state actors; they are private actors."); *Robinson v. Cleveland State Univ.*, No. 1:19-cv-1357, 2019 WL 5788595, at *2 (N.D. Ohio Nov. 6, 2019) (citing *Moore v. Int'l Bhd. of Elec. Workers Local 8*, 76 F. App'x 82, 83 (6th Cir. 2003)); *Kurek v. Ohio Dep't of Developmental Disabilities*, No. 3:16-cv-623, 2017 WL 2257744, at *3 (N.D. Ohio May 23, 2017); *Murray v. City of Columbus*, No. 2:10-cv-797, 2012 WL 4475718, at *10 (S.D. Ohio

6

Sept. 26, 2012). So, Plaintiffs' § 1983 claims survive only if Plaintiffs allege facts satisfying one of the three tests above.

*Public Function Test.* "Under the public function test, a private entity is said to be performing a public function if it is exercising powers traditionally reserved to the state." *Romanski*, 428 F.3d at 636 (collecting Supreme Court cases). Union functions, including representing unionized employees, are not traditional public functions. *See Finnegan v. Brannon*, No. 1:17-cv-01095-SLD-JEH, 2017 WL 3495696, at *2 (C.D. Ill. Aug. 15, 2017), *aff'd as modified sub nom. Finegan v. Brannon*, 742 F. App'x 143 (7th Cir. 2018). Nor do Plaintiffs allege that such functions are traditionally public ones. Accordingly, there is no state action under the public function test.

*State Compulsion Test.* "[A] State is responsible for the discriminatory act of a private party when the State, by its law, has compelled the act." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 170 (1970). There is no allegation that the state compelled any of the Defendants' actions here. As such, there is no state action under the state compulsion test.

*Symbiotic Relationship or Nexus Test.* Private conduct can constitute state action when "there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Marie v. Am. Red Cross*, 771 F.3d 344, 363 (6th Cir. 2014) (quoting *Wilcher v. City of Akron*, 498 F.3d 516, 520 (6th Cir. 2007)). The nexus required is a strong one. Mere cooperation between a private actor and the state, utilization of public services, or receipt of government funding are insufficient to establish state action under this test. *Lansing v. City of Memphis*, 202 F.3d 821, 831–32 (6th Cir. 2000). Moreover, the nexus must be related to the challenged actions—

7

entanglements between a private actor and the government on issues unrelated to the alleged misconduct do not create state action. *Marie*, 771 F.3d at 363 (citations omitted).

Here, Plaintiffs do not make any allegations of entanglement between any of the Defendants and the government, let alone entanglements related to the challenged actions. As a result, Plaintiffs have not pled state action under the symbiotic relationship or nexus test either.

In conclusion, Plaintiffs have failed to plead that Defendants were acting under color of state law. For this reason, the Court DISMISSES Plaintiffs' § 1983 claims. However, because Plaintiffs may be able to satisfy one of the three state action tests above by pleading additional facts, the Court will allow Plaintiffs to seek leave to amend their § 1983 claims.

### 2. Title VI Claims

Title VI prohibits "any program or activity receiving Federal financial assistance" from denying benefits or discriminating "on the ground of race, color, or national origin." 42 U.S.C. § 2000d. Private individuals may sue for violations of Title VI. *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001). But, as relevant here, Title VI claims are subject to two limitations. First, Title VI claims can only be brought against defendants that receive federal funding. *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1356 (6th Cir. 1996). Second, Title VI claims are not available against individuals. *Shah v. Univ. of Toledo*, No. 3:21-cv-581, 2021 WL 5140969, at *4 (N.D. Ohio Nov. 4, 2021) (citing *Buchanan*, 99 F.3d at 1356).

Plaintiffs have not alleged that the AAUP receives any federal funding. Therefore, the Court DISMISSES Plaintiffs' Title VI claims against the AAUP. If Plaintiffs can allege in good faith that the AAUP receives federal funding, they may move for leave to amend their complaint. However, because Title VI claims are categorically barred against individuals, the Court DISMISSES WITH PREJUDICE Plaintiffs' Title VI claims against Individual Defendants.

Plaintiffs may not amend their complaint to include Title VI claims against Individual Defendants.[1]

### 3. Title VII and Ohio Discrimination Claims

Both Title VII and Ohio law prohibit unions from discriminating on the basis of race or national origin. 42 U.S.C. § 2000e-2(c)(1) ("It shall be an unlawful employment practice for a labor organization . . . to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race . . . or national origin."); Ohio Rev. Code § 4112.02(C)(2) ("It shall be an unlawful discriminatory practice . . . [f]or any labor organization to . . . [d]iscriminate against, limit the employment opportunities of, or otherwise adversely affect the employment status, wages, hours, or employment conditions of any person as an employee because of race . . . [or] national origin."). "Because federal case law governing Title VII actions is generally applicable to discrimination claims under Ohio law," the Court analyzes both discrimination claims together. *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 561 (6th Cir. 2004) (citing *Little Forest Med. Ctr. v. Ohio C.R. Comm'n*, 575 N.E.2d 1164 (Ohio 1991)).

As an initial matter, neither Title VII nor Ohio discrimination claims are available against individual AAUP members or officers. Title VII makes it unlawful for a "labor organization" to discriminate based on race or national origin, 42 U.S.C. § 2000e-2(c), and permits plaintiffs to

---

[1] The Sixth Circuit has not squarely addressed whether Title VI creates a private right of action for retaliation. *Hayes v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 23-5027, 2023 WL 8628935, at *6 n.4 (6th Cir. Dec. 13, 2023). But the Court need not decide whether a Title VI retaliation claim exists because, even if such a claim exists, it would still be subject to the same limits as core Title VI discrimination claims. *See Bloomberg v. N.Y.C. Dep't of Educ.*, 410 F. Supp. 3d 608, 624–26 (S.D.N.Y. 2019) (a plaintiff must plead that defendants receive federal funding); *Verdi v. City of New York*, 306 F. Supp. 3d 532, 542 (S.D.N.Y. 2018) (Title VI retaliation claims are not available against individuals). Therefore, Plaintiffs' Title VI retaliation claims fail for the reasons given in this section.

9

sue "labor organizations" for employment discrimination.  42 U.S.C. § 2000e-5(b), (f)(1).  In turn, Title VII defines a "labor organization" as "a labor organization engaged in an industry affecting commerce, and any agent of such an organization."  42 U.S.C. § 2000e(d).  Plainly, an organization is not an individual.  But use of the word "agent" does not permit individual liability in this context either.

The Sixth Circuit has already addressed the meaning of "agent" in the context of Title VII's definition of "employer."  Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and *any agent of such a person*."  42 U.S.C. § 2000e(b) (emphasis added).  In this definition, the Sixth Circuit found that the word "agent" merely makes employers responsible for the actions of their employees and supervisors; the word "agent" does not create liability against those individual employees and supervisors.  *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405–06 (6th Cir. 1997).  Courts interpreting a statute presume that "'identical words used in different parts of the same statute' carry 'the same meaning.'"  *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017) (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005)).  Plaintiffs have provided no reason to depart from that presumption here, so the Court finds that use of "agent" in the definition of "labor organization" does not create liability against individual union members or officers.

Similarly, the Ohio prohibition on discrimination by unions runs only against "labor organizations."  Ohio Rev. Code § 4112.02(C).  The Ohio definition of "labor organization" differs somewhat from its Title VII counterpart.  Under Ohio law, a "labor organization" is "any organization that exists, in whole or in part, for the purpose of collective bargaining or of dealing with employers concerning grievances, terms or conditions of employment, or other mutual aid

or protection in relation to employment." Ohio Rev. Code § 4112.01(A)(4). This definition only includes organizations—it does not use the word "agent" and contains no other language that could refer to individuals. Thus, Ohio discrimination claims are not available against individual union members or officers either.

As a result, the Court DISMISSES WITH PREJUDICE both Plaintiffs' Title VII and Ohio discrimination claims against Individual Defendants. There is no possible Title VII or Ohio discrimination claim against individuals, so Plaintiffs may not raise such claims if they amend their complaint.

What remains are Plaintiffs' discrimination claims against the AAUP. "[A] union's breach of the duty of fair representation [] subjects it to liability under [employment discrimination law] if the breach can be shown to be because of the complainant's race . . . or national origin." *Robinson v. Cleveland State Univ.*, No. 1:19-cv-1357, 2019 WL 5788595, at *2 (N.D. Ohio Nov. 6, 2019) (first alteration in original) (quoting *Farmer v. ARA Servs., Inc.*, 660 F.2d 1096, 1104 (6th Cir. 1981)). However, "rumors, conclusory allegations and subjective beliefs . . . are wholly insufficient" to demonstrate a claim for discrimination. *Smith v. City of Toledo*, 13 F.4th 508, 519 (6th Cir. 2021) (alteration in original) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992)).

Plaintiffs have not offered anything beyond conclusory allegations and subjective beliefs. The complaint contains only two allegations of discrimination. First, Plaintiffs allege that Defendants "allowed [Plaintiffs] to be subjected to unfair and retaliatory treatment, isolation, and a hostile work environment because of [Plaintiffs'] race and national origin." (Doc. No. 1 at ¶ 15.) But nothing explains *why* Plaintiffs believe Defendants acted based on Plaintiffs' race or national origin. For example, there are no allegations that Defendants used racialized language

11

when interacting with Plaintiffs.  Nor are there any allegations that there were any specific instances where Defendants treated a union member of a different race or national origin than Plaintiffs more favorably than Defendants treated Plaintiffs.  Absent supporting allegations, Plaintiffs' assertion of discrimination is no more than subjective belief.

Second, Plaintiffs allege that Defendants had fulfilled their duty of fair representation "for many White faculty members in the past."  (*Id.*, Relief Sought.)  Standing by itself, this allegation amounts to no more than the conclusory assertion that Defendants discriminated.  Missing from the complaint are specific allegations that, if true, would allow Plaintiffs to prove to a factfinder that Defendants discriminated, such as specific examples of when Defendants allegedly treated White faculty members more favorably.

Accordingly, the Court DISMISSES Plaintiffs' Title VII and Ohio discrimination claims against the AAUP.  If Plaintiffs can allege particular facts supporting their claim of discrimination, they may move for leave to amend to add those facts to their complaint.

### 4.  Title VII and Ohio Retaliation Claims

Similar to Plaintiffs' discrimination claims, Plaintiffs' Title VII and Ohio retaliation claims generally run in tandem.  *Baker v. Buschman Co.*, 713 N.E.2d 487, 491 (Ohio Ct. App. 1998) ("For retaliation claims in Ohio, Federal law provides the applicable analysis for reviewing retaliation claims.") (internal quotation marks and citation omitted).  For this reason, the Court analyzes the substance of Plaintiffs' retaliation claims together.  Before reaching the substance, though, the Court begins with a key threshold difference between Title VII and Ohio retaliation claims.

Title VII's anti-retaliation provision reads, "It shall be an unlawful employment practice . . . for a labor organization to discriminate against any member thereof or applicant for

membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). As the Court explained in the previous section, Title VII defines "labor organization" to exclude the possibility of individual liability. So, like Title VII discrimination claims, Title VII retaliation claims are not available against individuals.

However, the Ohio anti-retaliation provision is very different. That provision makes it unlawful "[f]or any *person* to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." Ohio Rev. Code § 4112.02(I) (emphasis added). And the word "person" is defined to include "one or more individuals." Ohio Rev. Code § 4112.01(A)(1). Thus, unlike Title VII retaliation claims, Ohio retaliation claims can be made against individuals. *Williams v. Barton Malow Co.*, 581 F. Supp. 3d 923, 927 (N.D. Ohio 2022); *see also Norris v. G4S Secure Sols. (USA), Inc.*, No. 1:21-cv-1022, 2021 WL 3077502, at *2 (N.D. Ohio June 30, 2021).

As a consequence, the Court DISMISSES WITH PREJUDICE Plaintiffs' Title VII retaliation claim against Individual Defendants. Plaintiffs may not include this claim in any subsequent amended complaint. But the Court will proceed to the consider the substance of Plaintiffs' Ohio retaliation claim against Individual Defendants, and both Title VII and Ohio retaliation claims against the AAUP.

To state a claim for retaliation, a plaintiff must allege that she opposed a practice that she "reasonably believes to be a violation of Title VII." *Johnson v. Univ. of Cincinnati*, 215 F.3d

13

561, 579 (6th Cir. 2000). That is, the plaintiff must allege that she opposed *employment* discrimination, not that she opposed discrimination in general.

The complaint suggests that Defendants retaliated against Plaintiffs for giving a local television interview "focused on how students of color were faring in the [Covid-19] pandemic." (Doc. No. 1 at ¶ 2.) Based on Plaintiffs' description, this interview was not about employment discrimination; rather, the interview appears to be about the racially disparate impact of the pandemic on students. Since there is no allegation that Plaintiffs were opposing employment discrimination, the Court DISMISSES the Ohio retaliation claims against Individual Defendants and both Title VII and Ohio retaliation claims against the AAUP. Plaintiffs may seek to amend these claims if they can allege that they opposed unlawful employment practices.

### 5. Fair Representation Claims

Typically, a claim for breach of the duty of fair representation "is a question of federal law." *Maynard v. Revere Copper Prods., Inc.*, 773 F.2d 733, 735 (6th Cir. 1985) (citing *Motor Coach Emps. v. Lockridge*, 403 U.S. 274, 299 (1971)). Specifically, Section 9 of the Labor Management Relations Act (LMRA) usually governs. *Hart v. Gen. Elec. Co.*, No. 1:23-cv-12, 2023 WL 6201502, at *2 (S.D. Ohio Sept. 22, 2023) (citation omitted). However, the LMRA does not apply to state public employers. *Holloman v. Greater Cleveland Reg'l Transit Auth.*, 930 F.2d 918, 1991 WL 54885, at *3 (6th Cir. 1991) (unpublished table decision) (citing 29 U.S.C. § 152(2); *Manfredi v. Hazelton City Auth., Water Dep't*, 793 F.2d 101, 102 (3d Cir. 1986)). The parties here agree that Tri-C is an Ohio public employer (Doc. No. 8-1 at 7; Doc. No. 10 at 2), so Ohio law applies.

A public-sector union's duty of fair representation arises from Ohio Revised Code § 4117.11(B)(6). Claims arising from Chapter 4117 are committed to the exclusive initial

jurisdiction of the Ohio State Employment Relations Board ("SERB"). *Holloman*, 1991 WL 54885, at *3 (citing *Gunn v. Bd. of Educ.*, 554 N.E.2d 130 (Ohio 1988)); *Bielozer v. City of N. Olmsted*, No. 1:14-cv-1160, 2014 WL 4441378, at *3 (N.D. Ohio Sept. 9, 2014) (collecting Ohio cases). Consequently, the Court lacks jurisdiction over Plaintiffs' fair representation claims. *Holloman*, 1991 WL 54885, at *3; *Ashmus v. Bay Vill. Sch. Dist. Bd. of Educ.*, No. 1:06-cv-2364, 2007 WL 2446740, at *3 (N.D. Ohio Aug. 23, 2007). The Court DISMISSES the fair representation claims without prejudice. But because the Court lacks jurisdiction over these claims, Plaintiffs may not include this claim in any amended complaint.

### III. Motion to Disqualify

Although Plaintiffs did not formally file a motion to disqualify Defendants' counsel, Timothy Gallagher, under the principle of liberal construction of pro se filings, the Court construes Plaintiffs' opposition as such a motion. (*See* Doc. No. 10 at 1.) The Court interprets Plaintiffs' filing as raising two grounds for disqualification. First, Plaintiffs argue that Gallagher has a former-client conflict under Ohio Rule of Professional Conduct 1.9.[2] (*See id.*) Second, Plaintiffs argue that Gallagher is a necessary witness in this case, so Gallagher must be disqualified under Ohio Rule of Professional Conduct 3.7. (*See id.*)

#### A. Legal Standard

A federal court has the inherent power to disqualify an attorney from a case. *Gordon v. Dadante*, No. 1:05-cv-2726, 2009 WL 2732827, at *5 (N.D. Ohio Aug. 26, 2009) (collecting cases). But disqualification is a "drastic measure which courts will not impose unless absolutely necessary." *Farnhurst, LLC v. City of Macedonia*, No. 5:13-cv-668, 2015 WL 6758223, at *3

---

[2] The Northern District of Ohio has explicitly adopted the Ohio Rules of Professional Conduct to govern attorneys practicing in this Court. LR 83.7(a). So, the Court analyzes the substance of Plaintiffs' motion to disqualify under the Ohio Rules.

(N.D. Ohio Nov. 5, 2015) (quoting *Gould, Inc. v. Mitsui Min. & Smelting Co.*, 738 F. Supp. 1121, 1124–25 (N.D. Ohio 1990)). That is because disqualification motions "can be misused as techniques of harassment." *Hamrick v. Union Twp.*, 81 F. Supp. 2d 876, 878 (S.D. Ohio 2000) (citation omitted). As such, courts must treat disqualification motions "with extreme caution." *Id.*

In deciding a motion to disqualify an attorney, courts balance two competing interests: the "public interest[] of requiring professional conduct by an attorney" and the private interest "of permitting a party to retain the counsel of his choice." *Id.* (citing *Kitchen v. Aristech Chem.*, 769 F. Supp. 254, 257 (S.D. Ohio 1991)).

### B. Former-Client Conflict

Ohio Rule of Professional Conduct 1.9 governs former-client conflicts. Broadly speaking, an attorney is limited in her ability to represent persons or interests adverse to a former client's interests. *See* Ohio Rule of Professional Conduct 1.9. Of course, for these former-client limitations to come into play, a former attorney-client relationship must have existed. *See id.*; *see also Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990) (requiring "a past attorney-client relationship [] between the party seeking disqualification and the attorney it seeks to disqualify").

Under Ohio law, an attorney-client relationship can form in two ways: "by express contract or by implication." *Hustler Cincinnati, Inc. v. Cambria*, 625 F. App'x 712, 715 (6th Cir. 2015) (citing *Cuyahoga Cnty. Bar Ass'n v. Hardiman*, 798 N.E.2d 369, 373 (Ohio 2003)). Nothing in this case indicates that Plaintiffs had an express representation agreement with Attorney Gallagher. As a result, Plaintiffs can prevail on their disqualification motion only if an implied attorney-client relationship existed between Plaintiffs and Gallagher.

16

Whether an implied attorney-client relationship exists depends on "the reasonable belief of the prospective client." *Id.* at 716 (quoting *Hardiman*, 798 N.E.2d at 373). Courts consider several factors when evaluating reasonable belief, including: "whether (1) the client shared confidential information with the attorney, (2) the attorney offered legal advice or services, (3) the client relied on the advice, (4) the client sought to form an attorney-client relationship, (5) the attorney appeared on behalf of the client in judicial or administrative proceedings, and (6) the attorney prepared legal instruments." *Id.* (collecting Ohio cases). The first factor—sharing of confidential information—is especially important. *Id.* (citing *Landis v. Hunt*, 610 N.E.2d 554, 558 (Ohio Ct. App. 1992)). "The bar for proving an implied attorney-client relationship is high." *Id.* It is not enough to offer "[i]nnuendos and insinuations . . . ; the parties must point to 'the *manifest intentions* of the attorney and the prospective client.'" *Id.* (quoting *New Destiny Treatment Ctr., Inc. v. Wheeler*, 950 N.E.2d 157, 162 (Ohio 2011)) (emphasis in original).

Here, the entire crux of Plaintiffs' complaint is that Attorney Gallagher *did not* represent them. (*See* Doc. No. 1 at ¶¶ 3, 7–9, 11–12.) According to Plaintiffs, Gallagher "did not provide any legal advice" (*id.* at ¶ 8), did not attend Plaintiffs' internal disciplinary hearing or arbitration (*id.* at ¶¶ 8, 12), and even obstructed Plaintiffs from pursuing their desired defenses (*id.* at ¶¶ 7, 11). Moreover, Plaintiffs were forced to secure their own, separate counsel during their disciplinary proceedings. (*See id.* at ¶¶ 10–11.) Importantly, Plaintiffs allege that "Gallagher never reached out to either [Plaintiff] nor were either provided his contact information." (*Id.* at ¶ 9.) In these circumstances, it is clear that neither Plaintiffs nor Attorney Gallagher had a "manifest intention" to form an attorney-client relationship.

In fact, in the context of employment disciplinary hearings, courts across the country have regularly found that the union attorney participating in those hearings has an attorney-client

17

relationship with the union, not with the employee facing discipline.  *See e.g.*, *Greene v. Indep. Pilots Ass'n*, No. 3:14-cv-00628-TBR, 2016 WL 6877745, at *4–5 (W.D. Ky. Nov. 21, 2016) (collecting cases); *Gwin v. Nat'l Marine Eng'rs Beneficial Ass'n*, 966 F. Supp. 4, 7–8 (D.D.C. 1997), *aff'd*, 159 F.3d 636 (D.C. Cir. 1998); *Best v. Rome*, 858 F. Supp. 271, 276–77 (D. Mass. 1994), *aff'd*, 47 F.3d 1156 (1st Cir. 1995); *Piper v. Yamaha Corp. of Am.*, No. 4:90-cv-69, 1992 WL 21199, at *3 (W.D. Mich. Jan. 13, 1992).

In conclusion, the Court finds that Plaintiffs have failed to demonstrate that they ever formed an attorney-client relationship with Gallagher.  Thus, Gallagher is not subject to disqualification for a former-client conflict.

### C. Attorney as Necessary Witness

Ohio Rule of Professional Conduct 3.7 provides that "[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness," except under certain limited scenarios.  As a threshold matter, for Rule 3.7 to apply, the attorney must be a *necessary* witness.  In this context, necessity is a high bar.  "[R]elevant and even highly useful" testimony from an attorney does not make that attorney a necessary witness.  *Reo v. Univ. Hosps. Health Sys.*, 131 N.E.3d 986, 994 (Ohio Ct. App. 2019) (citation omitted).  Only when an attorney's testimony is "unobtainable through other trial witnesses" will that attorney be a necessary witness.  *Id.* (citation omitted).

At this stage of litigation, Plaintiffs allegations show at most that Attorney Gallagher's testimony may be "relevant and even highly useful."  *Id.*  Allegedly, Gallagher was intimately involved with Plaintiffs' disciplinary proceedings. (Doc. No. 1 at ¶¶ 7–9, 11–12.)  But Plaintiffs have failed to show that Gallagher's testimony cannot be obtained from other witnesses.  For one, Plaintiffs themselves can testify about their interactions with Gallagher.  So can the Individual Defendants, to the extent their conversations with Gallagher are not privileged.

18

The fact that Attorney Gallagher may have had (and most likely did have) privileged conversations with Individual Defendants does not require Gallagher's disqualification either. Rule 3.7 applies only if the attorney's testimony is admissible, *Reo*, 131 N.E.3d at 991, and privileged conversations are not admissible. In any case, disqualifying Gallagher would not affect the privileged status of any of his conversations with Individual Defendants; what is privileged would remain privileged and thus protected from disclosure.

Because Plaintiffs have failed to show that Attorney Gallagher is a necessary witness, it is not appropriate to disqualify Gallagher under Ohio Rule of Professional Conduct 3.7.

For the reasons given above, the Court DENIES Plaintiffs' motion to disqualify.

### IV. Conclusion

The Court DENIES Plaintiffs' motion to disqualify and GRANTS Defendants' motion to dismiss. The Court summarizes its ruling on Plaintiffs' claims as follows:

The Court DISMISSES WITH PREJUDICE Plaintiffs' Title VI discrimination claim against Individual Defendants; Title VI retaliation claim against Individual Defendants; Title VII discrimination claim against Individual Defendants; Ohio discrimination claim against Individual Defendants; and Title VII retaliation claim against Individual Defendants. Plaintiffs may not include these claims in any future amended complaint.

The Court DISMISSES Plaintiffs' breach of the duty of fair representation claim against all Defendants. Dismissal is without prejudice to Plaintiffs' ability to raise their fair representation claim before the SERB. However, because the Court lacks jurisdiction over this claim, Plaintiffs may not include this claim in any future amended complaint.

The Court DISMISSES Plaintiffs' § 1983 claim against all Defendants; Title VI discrimination claim against the AAUP; Title VI retaliation claim against the AAUP; Title VII discrimination claim against the AAUP; Ohio discrimination claim against the AAUP; Title VII

retaliation claim against the AAUP; and Ohio retaliation claim against all Defendants. Dismissal of each of these claims without prejudice to Plaintiffs' ability to raise them in an amended complaint. Plaintiffs may move for leave to amend their complaint to correct the deficiencies in these claims that the Court has identified in this Order.

If Plaintiffs seek to amend their complaint, they must file their motion for leave to amend within **thirty (30) days** of this Order. Plaintiffs must attach their proposed amended complaint to their motion. The proposed amended complaint must also comply with the standards of Federal Rule of Civil Procedure 8, *Twombly*, and *Iqbal* that the Court described above in Section II.A.1.

Failure to seek leave to amend by this deadline will result in dismissal of all claims with prejudice—except for Plaintiffs' fair representation claim, which will remain dismissed without prejudice—and the Court will enter judgment accordingly.

**IT IS SO ORDERED.**

**Date:** January 16, 2024

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE